[L. A. No. 10842. In Bank.—February 25, 1929.]

SOPHIE H. SHELTON, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

Anderson & Anderson for Appellant.

Jess E. Stephens, City Attorney, W. B. Mathews and George T. Warren for Respondents.

SHENK, J.—The plaintiff, as a taxpayer of the City of Los Angeles, sued to enjoin the defendants, and particularly the board of water and power commissioners of said city, from proceeding with the threatened issuance of what are denominated short-term notes of the board in the sum of $250,000 pursuant to the authority claimed by the board under section 224 of the city charter and an ordinance of the city, adopted in pursuance of the charter provision. A general demurrer to the complaint was sustained and, following a refusal of the plaintiff to amend, judgment of dismissal of the action was entered. This is an appeal from the judgment.

Section 224 of the city charter (Stats. 1925, p. 1098), referring to the powers of the defendant board, provides:

"Sec. 224. The board shall also have power upon determining that an emergency exists which justifies it in so doing to borrow money upon such terms and conditions, and under such procedure, as may be prescribed by ordinance, for the purpose of acquiring, constructing, reconstructing, repairing, extending or improving works for supplying the city and its inhabitants with water or electric energy, and to issue notes, certificates or other evidences of indebtedness therefor, subject to the following provisions:

"(1) The principal and interest of any indebtedness so created shall be payable only out of the revenue fund pertaining to the municipal works for or on account of which such indebtedness was created; excepting, however, that provision may be made for the payment of any such water or power indebtedness, or any part thereof, by the authorization and sale of general municipal or district bonds in the manner elsewhere prescribed in this charter.

"(2) The whole amount of any such indebtedness shall be payable in not to exceed five years from the time of contracting the same; provided, that any such indebtedness, or part thereof, made payable after one year from the time

of contracting the same shall be subject to the right of the board to pay the same with accrued interest thereon on any interest due date after said one year period.

"(3) The total outstanding indebtedness incurred under the provisions of this section for the purpose of either of such municipal works must not exceed thirty-three and one-third per cent of the gross operating revenue from such works during the preceding fiscal year.

"(4) The rates for service from the municipal works for or on account of which any such indebtedness is created shall be so fixed as to provide for payment at maturity of the principal and interest of such indebtedness in addition to all other obligations and liabilities payable from the revenue fund pertaining to such works."

On April 6, 1928, the city council of the city passed, and the mayor approved, Ordinance No. 60531, providing the terms, conditions and procedure for borrowing money under section 224 of the city charter. Section 1 of the ordinance provides as follows: "The Board of Water and Power Commissioners, upon determining by resolution that an emergency exists which justifies it in borrowing money, in an amount to be specified in such resolution, for the purpose of acquiring, constructing, reconstructing, repairing, extending or improving works for supplying the city and its inhabitants with water or electric energy, may borrow the same in pursuance of section 224 of the Charter against the revenues of the works for which such money is needed, upon the terms and conditions and under the procedure following, to-wit: . . . " Then follow the terms and conditions upon which such indebtedness shall be created and the proposed short-term notes be issued, including the requirement, pursuant to the charter provision, that the amount of the indebtedness shall be payable from the revenue fund pertaining to the municipal works for or on account of which such proposed indebtedness is to be created, specifying the maximum rate of interest, providing that the form and denomination of said notes shall, with certain restrictions, be determined by said board, and other terms, conditions and procedure with reference to the issue, sale and redemption of the notes. Section 2 of the ordinance recites that "Whereas, the destruction of the St. Francis dam has caused a serious emergency by reason of the fact

that it has decreased the water storage capacity and the water supply of the City of Los Angeles 38,000 acre-feet; that a portion of the Los Angeles Aqueduct and Power House No. 2 were destroyed; that the same or other works were and now are necessary to the proper and adequate service of the City of Los Angeles with water and electric energy; that unless immediately restored, the reserve supply of water and electric energy and the peace, health and safety of the inhabitants of the City of Los Angeles, will be jeopardized. That no funds are immediately available for the construction and acquisition of the necessary works to insure an adequate supply of water and electric energy." The ordinance was declared to be and was passed as an emergency measure.

On June 15, 1928, the defendant board of water and power commissioners passed a resolution declaring that an emergency existed by reason of the St. Francis dam disaster which justified the board in borrowing money under the authority of section 224 of the charter and of said Ordinance No. 60531, to the extent of $250,000.

It is alleged in the complaint that the board is threatening to issue its short-term notes pursuant to the authority thus granted. No objection is made to the method of the exercise of the power by the board, but it is alleged that the necessary and requisite expenditures of the City of Los Angeles and the bureau of waterworks and supply for the fiscal year 1928, inclusive of the obligations proposed and threatened to be incurred by the issuance and sale of the short-term notes, exceed the income and revenues provided for said City of Los Angeles and the bureau of waterworks and supply of said city for such fiscal year by an amount in excess of $200,000; that no election has been had or called or is contemplated for the purpose of obtaining the assent of two-thirds of the qualified electors of said city to the incurring of the indebtedness and that no provision has been made at or before the incurring of the indebtedness or at all, for the collection of any tax sufficient to pay the principal and interest on the indebtedness as required by section 18 of article XI of the constitution.

The sole question for decision is, Do notes or other evidences of indebtedness issued under the authority of section 224 of the charter by the defendant board of water

and power commissioners of the City of Los Angeles, and payable solely out of water revenues of the defendant board, create such an indebtedness as falls within the inhibition of section 18 of article XI of the state constitution?

The defendants take the position that the provisions of section 18 of article XI of the constitution have no application to indebtedness of the board of water and power commissioners incurred in the manner contemplated for the reason that the department of water and power is not mentioned nor described in that section of the constitution, and further, that the contemplated indebtedness is one payable only out of a special fund and is not an obligation of the City of Los Angeles.

We think the contentions of the defendants must be sustained. The board of water and power commissioners is, under section 225 of the present charter (Stats. 1925, p. 1099), the successor of the board of public service commissioners created by charter amendment in 1911 (Stats. 1911, p. 2051), which in turn was the successor of the board of water commissioners created by charter amendment in 1903 (Stats. 1903, p. 555). That the old board of water commissioners and its successor, the board of public service commissioners, were not subject to the inhibition of section 18 of article XI of the constitution was decided in 1913 in the case of *Mesmer* v. *Board of Public Service Commrs.*, 23 Cal. App. 578 [138 Pac. 935]. It appeared in that case that the board of water commissioners had, in 1909, contracted for the expenditure of money in excess of its income and revenue in that year for the purchase of property on which to erect a building for the water department and that the board of public service commissioners was threatening to carry out the alleged illegal contract. A taxpayer sued to enjoin the completion of the contract of purchase. The contention was made by the defendant board of public service commissioners that the constitutional provision was inapplicable to the incurring of the indebtedness. The court said: "Section 18 of article XI of the constitution, which forbids a city, etc., from incurring any indebtedness exceeding in any one year the income and revenue provided in such year without the favorable vote of two-thirds of the electors, is not applicable. The prohibition in this section provided does not extend to a board of commissioners exer-

cising functions under the charter of a city, such as appears here. It is a sufficient answer to this contention to note that such a board is not named or described in the section of the constitution which is invoked. (See *In re Madera Irr. Dist.*, 92 Cal. 296 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675]; *Robertson* v. *Board of Library Trustees*, 136 Cal. 403 [69 Pac. 88].) Furthermore, the money used and proposed to be used in the purchase of the lot of ground and the erection of the building was not to be taken from the ordinary revenues of the city, and to that extent it may be said that the city's credit was not involved in the incurring of the indebtedness.''

The present department of water and power, under the city charter, appears to have all of the power of its predecessor boards and certain additional powers, including the power, upon the determination that an emergency exists, to issue its short-term notes under section 224. As so constituted and empowered it is, like its predecessors, independent of the city council except as to certain limitations which do not destroy its identity as an independent body. Also it must be said that the indebtedness of the board and the obligations of the department are not those of the city itself, as contemplated by the constitutional provision.

It appears from the allegations of the complaint that the budget of the bureau of waterworks and supply for the fiscal year 1928–29 was adopted by the defendant board on May 25, 1928, and that the anticipated revenues of the bureau of waterworks and supply for said year is the total sum of $11,300,000, and that provision is made in said budget for the payment of $50,000 on account of principal and $15,000 on account of interest accruing on the proposed short-term notes. Under section 220 of the charter the water revenue fund is established and the income of the bureau of water works and supply is required to be deposited in this special fund and is not to be commingled with other funds of the city. Section 221 of the charter provides that the water revenue fund shall be used in the following order: First, for the necessary expenses of operating and maintaining the waterworks; second, "for the payment of the principal and interest, or either, due or coming due upon outstanding notes, certificates, or other evidences of indebtedness issued

against revenues from such works, in pursuance of section 244. . . . ''

It is clear that the charter plan for the creation of the indebtedness contemplated by section 224 is to constitute such indebtedness an obligation of the department of water and power distinct from an obligation of the city proper. The right of subordinate municipal boards to exercise similar independent powers conferred upon them by statute or charter provision and to contract for payment of moneys from their special funds has been recognized in other jurisdictions. (See *American Electric Co.* v. *City of Waseca,* 102 Minn. 329 [113 N. W. 899]; *State ex rel. Briggs* v. *McIlraith,* 113 Minn. 237 [129 N. W. 377]; *Crane* v. *City of Urbana,* 2 Ill. App. 559; *Gross* v. *Portsmouth,* 68 N. H. 266 [73 Am. St. Rep. 586, 33 Atl. 256]; *Gunnison* v. *Board of Education,* 176 N. Y. 11 [68 N. E. 106]; *Winston* v. *City of Spokane,* 12 Wash. 524 [41 Pac. 888]; *Uhler* v. *City of Olympia,* 87 Wash. 1 [151 Pac. 117, 152 Pac. 998]; *Twitchell* v. *City of Scattle,* 106 Wash. 32 [179 Pac. 127]; *Fox* v. *Bicknell,* 193 Ind. 537 [141 N. E. 222].) And the incurring of such indebtedness has been held elsewhere not to be violative of a constitutional provision such as our own section 18 of article XI. (*City of Bowling Green* v. *Kirby,* 220 Ky. 839 [295 S. W. 1004]; *Shields* v. *City of Loveland,* 74 Colo. 27 [218 Pac. 913]; *Brockenbrough* v. *Board of Water Commissioners of City of Charlotte,* 134 N. C. 1 [46 S. E. 28]; *State ex rel. Smith* v. *Mayor etc. of City of Neosho,* 203 Mo. 40 [101 S. W. 99].)

The plaintiff cites no California case opposed to the rule contended for by the defendants. Her counsel concede the force of the direct and definite declarations of the district court of appeal in the case of *Mesmer* v. *Board, etc., supra,* particularly bearing upon the status and the functions of the city board of which the defendant board in the present action is the immediate successor. It is further conceded that one of the issues involved herein and mainly relied upon by the plaintiff, viz., the applicability of section 18 of article XI of the constitution to obligations incurred by the defendant board, was involved and decided in the Mesmer case. It is true that the law laid down in that case, notwithstanding the denial of a petition for hearing in this court, is not binding here (*People* v. *Davis,* 147 Cal. 346 [81 Pac. 718]),

yet we find no good reason for declaring the contrary rule and are fully satisfied with the soundness of the doctrine announced in that case. The cases of *Chester* v. *Carmichael,* 187 Cal. 287 [201 Pac. 925], and *City and County of San Francisco* v. *Boyle,* 195 Cal. 426 [233 Pac. 965], relied upon by the plaintiff, are not in point for the reason that they involved indebtedness or obligations of the municipalities concerned in the litigation which were intended to be satisfied out of revenues derived by such cities from the exercise of the power of taxation.

It is insisted by the plaintiff that if it be held that the indebtedness sought to be incurred by the defendant board is not an indebtedness as contemplated by the constitutional provision, nevertheless there is a liability assumed by the city itself within the constitutional inhibition by reason of the charter plan for the fixing of water rates. It is argued that water rates must be so fixed as to discharge the principal and interest on the short-term notes as the same become due and that inasmuch as any schedule of rates for water service fixed by the defendant board must be approved by the council by ordinance, it would follow that the obligation to provide a sufficient revenue to discharge the principal and interest of said short-term notes would constitute a "liability" on the part of the city as contemplated by the constitutional section. It may be conceded that upon the incurring of the proposed indebtedness, a strong moral obligation, which the city could not well avoid, would rest upon the city council and mayor to approve a schedule of rates theretofore fixed by the board sufficient to discharge the principal and interest as the same might become due. But this obligation or "liability," as the latter term is used in the constitution, is not a financial one in default of which the city would be required to disburse the general funds of the city or other moneys derived from taxation. The argument that the obligation of the legislative body of the city to safeguard the credit of the city by approving adequate water rates would amount to a "liability" within the constitutional section is not persuasive. The plaintiff finds some comfort in language used in the majority opinion in *Feil* v. *City of Coeur D'Alene,* 23 Idaho, 32 [43 L. R. A. (N. S.) 1095 [129 Pac. 643], wherein, under a constitutional provision like our own, the supreme court of Idaho reversed

the judgment of the trial court denying an injunction and ordered the entry of a judgment enjoining the issuance of twenty-year serial bonds for the purchase of waterworks by the defendant city from a private corporation. This injunction was ordered on the ground that the bonds to be issued were direct promises of the city to pay the amounts thereof and that the statement in the body of the bonds that the same should be payable only from revenues of the waterworks system did not relieve the city of its constitutional liability to provide funds for the payment of the bonds. In the present case the proposed short-term notes are not promises to pay on the part of the City of Los Angeles, but are acknowledgments of indebtedness on the part of the department of water and power. The City of Los Angeles, as such, is not bound thereby to do anything which may be enforced by action. Hence we find therein no liability on the part of the city in the premises. The case of *Voss* v. *Waterloo Water Co.,* 163 Ind. 69 [106 Am. St. Rep. 201, 2 Ann. Cas. 978, 66 L. R. A. 95, 71 N. E. 208], and *State ex rel. Morgan* v. *Portage,* 174 Wis. 588 [184 N. W. 376], also relied on by the plaintiff, are not in point, for in each case the proposed indebtedness was in terms intended to be an indebtedness or constitute a financial liability for which the municipal corporation itself would be bound and as such was in violation of the constitutional inhibition.

The judgment is affirmed.

Richards, J., Seawell, J., Curtis, J., Preston, J., Waste, C. J., and Langdon, J., concurred.