Appellant was arrested for the July 11, 1980, unlawful sale of prohibited beverages contrary to § 28-4-20, Code of Alabama 1975. On August 29, 1980, he was found guilty in District Court. He appealed to the Circuit Court for trial de novo. On December 9, 1980, appellant was tried and convicted with the jury assessing him a $500.00 fine. Under § 28-4-21, Code of Alabama 1975, the trial court imposed a sentence of nine months' imprisonment in the county jail, but suspended all but sixty days of it. Throughout the trial and appellate proceedings appellant has been represented by counsel of his choice
Appellant raises no issue on appeal as to the sufficiency of the State's evidence. Nevertheless, a thorough review of the State's evidence leaves no doubt that it presented a prima facie case of illegally selling prohibited beverages and was properly submitted to the jury for its consideration Therefore, only a narration of the facts is necessary for disposition of this cause
Franklin County Deputy Sheriff Randy Jones testified that, on June 25, 1980, he and his brother, Alan, were sworn as deputy sheriffs by District Court Judge Joe Gilliland. Present was Franklin County Sheriff U.R. Jarnigan. Around 9:00 p.m., on July 11, 1980, he and his brother, acting in their *Page 1062 
capacity as deputy sheriffs, drove in his car to appellant's residence in Franklin County. As he parked next to a shed adjacent to the house, he observed four teenagers, two of whom were inside the shed. As he approached the shed one of the teenagers exited carrying a sack containing at least one six-pack of beer. The teenagers immediately drove away
Deputy Jones entered the shed and rang the bell (which had a sign hanging under it reading "Ring for Service") while his brother remained in the car. Appellant answered, opened a window, and asked what he needed, to which Deputy Jones replied, one-half case of beer. Deputy Jones saw appellant open a cooler under the window, remove two six-packs of beer, place them in a paper sack, and hand it to him. Appellant charged him $9.00. Deputy Jones paid appellant and left. A short distance from appellant's house, his brother transferred the beer to the trunk of the car. Later that evening, they labelled the beer for identification and stored it in his brother's house. On July 21, 1980, they moved it to their office in Franklin County Jail where they normally kept all their evidence. He stated that it was not the only room used by the Sheriff's Department for storing evidence. Deputy Jones stated that only his brother had keys to both locks on their office door. The beer remained in the office until removed for the instant trial. He identified the beer and appellant as the person who sold it. On July 18, 1980, they arrested appellant at his house
Franklin County Deputy Sheriff Alan Jones reiterated most of his brother's testimony concerning the July 11, 1980, purchase of beer from appellant. He added that he was about fifteen feet away from the window located inside the shed and could see into it. He stated that he labelled the beer at his house and stored it there until July 21 when it was moved to their office at the county jail. He identified the beer which was admitted into evidence. He inspected the contents of one of the cans and stated that it contained beer
Appellant contends that both deputies were without legal authority to arrest him as they had not complied with § 36-4-5, Code of Alabama 1975. A stipulation of facts read into the record by appellant's counsel reveals that, although both deputies had been orally sworn by Judge Gilliland on July 25, 1980, it was not until August 29, 1980, that they filed a written copy of it along with a bond with the probate court Appellant asserts that they were not de facto deputies. We disagree
One who is actually acting as a deputy sheriff under color of right is such officer de facto, although the statutory requisites of appointment, such as filing the requisite oath or giving and signing the necessary bond, have not been complied with. 80 C.J.S. Sheriffs and Constables § 28 (1953). See also 67 C.J.S. Officers §§ 266-68, 270, 276 (1978)
A de facto officer is one who exercises the duties of a dejure office under color of appointment or election, and his official acts are valid. Dixie Dairies — Dairy FreshCorporation v. Alabama State Milk Control Board, 286 Ala. 198,238 So.2d 551; Ex Parte Register, 257 Ala. 408, 60 So.2d 41,42; Coe v. City of Dothan, 19 Ala. App. 33, 94 So. 186
As stated in Joseph v. Cawthorn, 74 Ala. 411, 414, 415:
 "It has frequently been decided, and it is clear upon principle, that the failure of an officer to conform to some statutory condition, or constitutional requirement, such as taking an oath, giving bond, or the like, does not remove his de-facto character, where he is acting under color of a known and valid appointment or election. . .
 There is no distinction in law between the official acts of an officer de jure, and those of an officer de facto. So far as the public and third persons are concerned, the acts of the one have precisely the same force and effect as the acts of the other . . Their official acts are equally valid. The rule is one which is dictated alike by principles of justice and public policy." (citations omitted) *Page 1063 
See also Cary v. State, 76 Ala. 78; Heath v. State, 36 Ala. 273; State v. Holloway, Fla.Dist.Ct.App., 318 So.2d 421
From the record it is clear that both deputies were acting under color of right as de facto deputies. They were orally sworn in the presence of the Sheriff, performed duties consistent with the appointment, maintained an office in the county jail, and were entrusted with the only keys to gain access therein. The trial court properly denied appellant's motions to suppress, quash the arrest warrant, dismiss the complaint, and denied the motion for a new trial on the above ground
Appellant's last contention of error centers upon a comment made by the prosecuting attorney during his closing argument where he stated, "He [appellant] was out there selling to teenagers."
A prosecutor may argue every legitimate inference from the evidence, and may examine, collate, sift, and treat the evidence in his own way. Evans v. State, Ala.Cr.App.,389 So.2d 567; Favor v. State, 389 So.2d 556; Williams v. State, Ala.Cr.App., 377 So.2d 634, cert. denied, Ala., 377 So.2d 639
Liberal rules are allowed counsel in drawing inferences from the evidence in their arguments to the jury, whether they are truly drawn or not. Chambers v. State, Ala.Cr.App.,382 So.2d 632, cert. denied, 382 So.2d 636
We find no error committed by the comment of the prosecuting attorney as it was a reasonable inference drawn from the evidence
A thorough review of the record finds nothing prejudicial to the substantial rights of the appellant. The judgment of conviction is hereby affirmed
AFFIRMED
All the Judges concur